UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


DOUGLAS P. KEATING, JR.,

      Plaintiff,

v.                                    Case No:  2:25-cv-00598-JES-KRH

SHERIFF KEVIN RAMBOSK, in his official capacity, DEPUTY CHRISTIAN TULBURE, individually, DEPUTY CHRISTOPHER KARAM, individually, DEPUTY RYAN WILLIAMS, individually, DEPUTY AUSTIN ROBINSON, individually, SERGEANT PATRICK J. STUBBE, individually, JOHN DOE 1 (BOOKING AREA DEPUTY), individually, JOHN DOE 2 (BOOKING AREA DEPUTY), individually, JOHN DOE 3(BOOKING AREA SUPERVISOR), individually, JOHN DOE 4 (TRANSPORT/CONTROL DEPUTY), individually, JOHN DOE 5 (INFIRMARY ESCORT DEPUTY), individually, and ANY ADDITIONAL INDIVIDUALS OR ENTITIES LATER IDENTIFIED,

      Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on review of Defendant Sheriff Kevin Rambosk's ("Sheriff Rambosk") Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. #42) filed on April 22,

2026.   Plaintiff, Douglas Keating, Jr. ("Keating"), filed his Response in Opposition (Doc. #46) on April 30, 2026.   For the reasons set forth below, Sheriff Rambosk's motion is granted in part and denied in part.

**I.**

From August 1 to August 2, 2025, Keating was detained at the Collier County Jail.   (Doc. #28, ¶ 18.)   While detained, Keating used the inmate phone and was ordered by Deputy Christian Tulbure ("Deputy Tulbure") to end the call.   (Id. ¶ 19.)   Rather than end the call Keating objected, prompting Deputies Tulbure and Christopher Karam ("Deputy Karam") to strike Keating in the head and upper body.   (Id. ¶¶ 20-22.)   As Deputies Tulbure and Karam were hitting Keating, Deputies Ryan Williams ("Deputy Williams") and Austin Robinson ("Deputy Robinson") restrained Keating, but did not object to Deputies Tulbure's or Karam's use of force.   (Id. ¶¶ 23, 26-28.)

Keating exhibited visible injuries, including head trauma, chest pain, and other physical injuries.   (Id. ¶ 29.)   Deputies Tulbure, Karam, Robinson, and Williams were all aware of these visible injuries and were present, alongside Sergeant Patrick J. Stubbe ("Sergeant Stubbe"), when Keating requested medical attention.   (Id. ¶ 30-31.)   Sergeant Stubbe, however, failed to obtain timely and adequate medical treatment.   (Id. ¶ 32.)

Instead, Deputies Tulbure, Karam, Williams, and Robinson placed Keating into a different holding cell with standing water.  (Id. ¶¶ 34-37.)

After being released, Keating obtained medical treatment costing $4,273.  (Id. ¶ 33.)  Keating now brings the instant action against the deputies in their individual capacities and Sheriff Rambosk in his official capacity.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted).  As the Eleventh Circuit has recently summarized:

> When reviewing a motion to dismiss, we accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. When making the determination of whether a complaint states a plausible claim, we draw on our judicial experience and common sense.

> . . .
> We use a two-step process to determine whether a claim survives Rule 12(b)(6) scrutiny. At the outset, we determine what must be pled for each cause of action. . . . Then, we consider the well-pleaded factual allegations ... to determine whether they plausibly suggest an entitlement to relief.

Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp., 147 F.4th 1341, 1346-47 (11th Cir. 2025)(citations and internal punctuation omitted).

Pro se pleadings are held to a less stringent standard than counseled pleadings and, therefore, are liberally construed. Campbell v. Air Jam. Ltd., 760 F.3d 1165, 1168 (11th Cir. 2014). Nevertheless, this liberal construction does not entitle a court to serve as de facto counsel to a pro se party or rewrite deficient pleadings. See id. at 1168-69. Pro se litigants, however, are still required to conform to procedural rules. See Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007); Goldsboro v. Ivey, No. 25-11394, 2026 WL 507421, at *3 (11th Cir. Feb. 24, 2026).

### III.

#### A. The Court Strikes the Paragraphs Rendering the Third Amended Complaint a Shotgun Pleading

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015). Of the four categories outlined in

Weiland, the most prominent shotgun pleading occurs where a party incorporates preceding paragraphs from the previous counts, thereby causing most of the counts (i.e., all but the first) to contain irrelevant factual allegations and legal conclusions. Id. at 1324 (citations omitted).

Counts II through V "reallege[] and incorporate[] all preceding paragraphs as if fully set forth herein." (Doc. #28, ¶¶ 67, 72, 76, 81.) By doing so, the Third Amended Complaint is a "quintessential 'shotgun' pleading — the sort of pleading we have been roundly condemning for 30 years." See Keith v. DeKalb Cnty., 749 F.3d 1034, 1045 n.39 (11th Cir. 2013)(collecting cases). As a result, each count is now "replete with factual allegations that could not possibly be material to that count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001).

To Keating's credit, the Third Amended Complaint is not so long — nor so filled with factual allegations — to make it nearly impossible to parse through the facts. However, this aspect of the Third Amended Complaint must be addressed. Rather than dismiss the Third Amended Complaint as a shotgun pleading, the Court will instead strike the paragraphs that render it a shotgun pleading, i.e., Doc. #28, ¶¶ 67, 72, 76, 81.

**B.    Keating Fails to Allege Sufficient Facts Establishing a Policy or Custom**

Keating claims Sheriff Rambosk in his official capacity is liable because the policies and customs of the Collier County Sheriff's Office caused various constitutional violations.  (Doc. #28, ¶¶ 81-83.)  Sheriff Rambosk argues Count V should be dismissed because Keating fails to allege either a policy or a custom that caused any alleged constitutional violation.  (Doc. #42, pp. 4-7.)  Keating contends he sufficiently pled facts that create a reasonable inference to support any of his underlying theories. (Doc. #46, pp. 2-3.)  The Court agrees with Sheriff Rambosk that Keating failed to allege sufficient facts establishing a policy or custom under either Keating's failure to train or supervise theory or ratification of the constitutional violations theory.

A municipality cannot be held vicariously liable for the constitutional violations of its employee.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  The government as an entity may be responsible, however, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  See id. at 694.  To impose such liability, a plaintiff must show that: (1) "his constitutional rights were violated;" (2) "the municipality had a custom or policy that

-6-

constituted deliberate indifference to that constitutional right;" and (3) "the policy or custom caused the violation." See Underwood v. City of Bessemer, 11 F.4th 1317, 1333 (11th Cir. 2021)(quoting McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004)).

Liability may be based on an official policy or "a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." Khoury v. Miami-Dade Cnty. Sch. Bd., 4 F.4th 1118, 1131 (11th Cir. 2021)(quoting Church v. City of Huntsville, 30 F.3d 1332, 1342-43 (11th Cir. 1994)). "[A] policy is a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality," while a "custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." See Goebert v. Lee Cnty., 510 F.3d 1312, 1332 (11th Cir. 2007)(citations omitted).

### (1)  Failure to Train and Supervise Deputies

When a plaintiff alleges a failure to train or supervise they must allege facts showing the failure "evidences a deliberate indifference" to the municipality's inhabitants' rights. See Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1293 (11th Cir. 2009)(citation omitted); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)(applying same analysis to failure to

-7-

supervise claims).    There must be "some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."    Lewis, 561 F.3d at 1293 (citation omitted). A plaintiff can show this in two ways.    First, there exists "[a] pattern of similar constitutional violations by untrained employees . . . ."    See Connick v. Thompson, 563 U.S. 51, 62 (2011). Second, even without prior events, the plaintiff can establish deliberate indifference if "if the likelihood for constitutional violation is so high that the need for training would be obvious." See Lewis, 561 F.3d at 1293.    Keating only relies upon the first premise.

Keating presents two conclusory allegations to support his Monell claim.    First, Keating claims "the constitutional violation suffered by Plaintiff were caused by policies, customs, or practices of the Sheriff's Office."    (Doc. #28, ¶ 55.)    Second, Keating alleges "similar incidents involving excessive force and punitive conditions occurred prior to Plaintiff's incident and were known to supervisory personnel."    (Id. ¶ 57.)    These allegations fail to provide the who, what, when, or where of previous similar constitutional violations by untrained or unsupervised employees and therefore are insufficient to support a failure to train or supervise theory of liability.    See Twombly,

-8-

544 U.S. at 555 (holding that conclusory allegations are insufficient to plausibly state a claim).   Without such allegations, Keating is only left with his own single-incident, which fails to plausibly state a policy or custom.[1]   See Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011)(quoting City of Okla. City v. Tuttle, 471 U.S. 808, 823-24 (1985)).

### (2)   Failure to Discipline Deputies

Where a plaintiff alleges a failure to take disciplinary action against officers, it can be used to establish a custom if the facts support a finding that "a persistent failure to take disciplinary action against officers" resulted in the municipality ratifying the conduct.   See Fundiller v. City of Cooper City, 777 F.2d 1436, 1442-43 (11th Cir. 1985); Ingram v. Kubik, 30 F.4th 1241, 1256 (11th Cir. 2022)(quoting Fundiller, 777 F.2d at 1443)). Where there are sufficient facts showing this persistent failure, it also "provide[s] the causal link between the challenged conduct

---

[1] Keating argues his allegations are not a "single incident," but rather a "multi-stage sequence of constitutional violations involving multiple officers, multiple decision points, supervisory awareness, post-incident review, and continued non-corrective institutional inaction."   (Doc. #46, p. 2.)   Though correct that he alleges multiple constitutional violations over his day-long detention, Keating's argument misses the point.   To support the Monell claim, Keating must show similar incidents involving other detainees, since the violations at issue in this case constitute a single incident, which generally cannot establish a policy or custom.   See Craig, 643 F.3d 1306, 1311 (discussing how a single constitutional violation involving several employees is insufficient to prove a policy or custom).

and the policy, because [the officer] would have been acting in accordance with the policy of allowing or encouraging [violating constitutional rights]." See Ingram, 30 F.4th at 1256 (quoting Fundiller, 777 F.2d at 1443). Just as Keating's failure to train or supervise theory fails, so too does his failure to discipline theory.

Keating's only allegations relating to previous actions are: (1) "similar incidents involving excessive force and punitive conditions occurred prior to Plaintiff's incident and were known to supervisory personnel[;]" and (2) "[t]he Sheriff's Office had notice of these practices and failed to take corrective action. . .. " (Doc. #28, ¶¶ 57, 59.) These allegations are conclusory, failing to provide the who, what, when, or where of the prior incidents. See Twombly, 544 U.S. at 555 (holding that conclusory allegations are insufficient to plausibly state a claim). This again leaves Keating with his own incident, which is insufficient to show a widespread custom or policy that allows or encourages deputies to violate constitutional rights. See Craig, 643 F.3d at 1310. Accordingly, Keating fails to allege sufficient facts to plausibly show a persistent failure to take disciplinary action against officers.

C.    **The Fictitious Parties Will Not Be Dismissed at this Time**

Finally, Sheriff Rambosk argues the fictitious parties should be dismissed because Keating has failed to describe the defendants with sufficient specificity.  (Doc. #42, p. 7.)  Keating contends dismissal of the fictitious parties is premature since "the identities of involved officers remain uniquely within Defendants' control and are reasonably expected to be identified through discovery."  The Court agrees with Keating at this time.

Generally, "fictitious-party pleading is not permitted in federal court."  See Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010)(citing New v. Sports & Recreation, Inc., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)).  A limited exception applies "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'"  See id. (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992)).

Here, the Court finds it premature to dismiss the fictitious parties.  Keating identifies two individuals as "Booking Area Deput[ies]" and three other individuals as "Booking Area Supervisor," "Transport/Control Deputy," and "Infirmary Escort Deputy."  This is sufficient for purposes of the instant motion. Through the discovery process, Keating will have the ability to

-11-

obtain the identities of the deputies.[2]  Accordingly, the motion to dismiss the fictitious parties will be denied without prejudice.

For the reasons set forth in this order, the motion to dismiss will be granted in part and denied in part.

Accordingly, it is now

**ORDERED:**

(1)  Paragraphs 67, 72, 76, and 81 are **STRUCK** from the Third Amended Complaint.

(2)  Defendant Sheriff Kevin Rambosk's ("Sheriff Rambosk") Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. #42) is **GRANTED IN PART AND DENIED IN PART.**  Count V is **DISMISSED without prejudice.**  The motion to dismiss the fictitious-parties is **DENIED without prejudice.**

(3)  The Clerk shall withhold judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this   16th   day of June 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record

---

[2] The Court notes that should this occur, Keating must seek leave to file an amended complaint, either from opposing parties or the Court, as he will not be able to amend as of right.  See Fed. R. Civ. P. 15(a)(2).